101 F.3d 877
 HELLENIC AMERICAN NEIGHBORHOOD ACTION COMMITTEE, Plaintiff-Appellee,
v.
The CITY OF NEW YORK, Mayor Rudolph Giuliani, City of New
York Human Resources Administration, Marva Livingston
Hammons, Deputy Commissioner Seth Diamond, Deputy
Commissioner Violet Mitchell and City of New York Department
of Youth Services, Defendants-Appellants.
 No. 698, Docket 96-7840.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1996.
Decided Dec. 5, 1996.
 
 Allan M. Pepper, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Plaintiff-Appellee.
 Lawrence S. Kahn, Corporation Counsel of the City of New York, New York City, for Defendants-Appellants.
 Before: WALKER, McLAUGHLIN, and JACOBS, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 Defendants appeal from an order of the United States District Court for the Southern District of New York (Sotomayor, J.) granting plaintiff's motion for a preliminary injunction.
 
 BACKGROUND
 Procurement Procedures in General
 
 1
 Under the New York City Charter, a bidder for a City contract must clear two hurdles. First, the bid must be "the most advantageous to the city," taking into consideration a variety of factors, including price. N.Y. City Charter § 319. Second, a bidder must be found "responsible" by the agency granting the contract. N.Y. City Charter § 313(b)(2),(3). The City Charter then requires contracts to be awarded to the "lowest responsible bidder," unless it is in the City's "best interest" to accept another bid. N.Y. City Charter § 313(b)(2).
 
 
 2
 The Procurement Policy Board (PPB) establishes standards and procedures to determine whether bidders are responsible. N.Y. City Charter § 311. The PPB Rules ("Rules") define a responsible bidder as "one which has the capability in all respects to perform fully the contract requirements and the business integrity to justify the award of public tax dollars." 9 RCNY § 5-02(b)(1). The Rules enumerate eight illustrative factors that may be considered in determining whether a bidder is responsible, including "[a] satisfactory record of business integrity." 9 RCNY § 5-02(b)(2)(vi). Each head of the City's various procuring agencies has "final approval in the award of contracts for goods, services and construction" involving his agency. 9 RCNY § 5-04(a).
 
 
 3
 The City maintains a publicly accessible computer database (VENDEX) of all bidders. 9 RCNY § 5-02(e). Any finding of nonresponsibility by an agency must be reported to the VENDEX. 9 RCNY § 5-02(h)(3). Agency contracting officers must check the VENDEX for adverse entries regarding bidders before awarding a contract. 9 RCNY § 5-02(g)(1)(i).
 
 
 4
 The Department of Investigation (DOI) is required to report to an inquiring agency if a bidder is the subject of an investigation. 9 RCNY § 5-02(f). If an investigation is under way, an agency can request a report from the DOI on its findings. Id. The agency contracting officer and the agency head then have the discretion to determine whether the investigation warrants a finding of nonresponsibility. Id.
 
 
 5
 A nonresponsibility determination is appealable within the agency from the contracting officer to the agency head, and from there to the Mayor, who may delegate this authority to the City Chief Procurement Officer. 9 RCNY § 7-03.
 
 
 6
 The City Charter states that "[n]o person or firm shall be suspended or debarred from contracting with the city or any agency of the city ... [without] reasonable notice and reasonable opportunity ... to respond at a hearing to be held on a record." N.Y. City Charter § 335(a),(b)(1). The Charter lists several grounds for debarment, including indictment or conviction, violation of contract provisions, or an agency determination of nonresponsibility. N.Y. City Charter § 335(b)(3). Sole authority for a debarment determination lies in the City's Office of Administrative Trials and Hearings (OATH). N.Y. City Charter § 335(b)(1). A debarment disqualifies a bidder from consideration for the grant of any City contract or the renewal of any existing City contract for up to five years, at the discretion of OATH. N.Y. City Charter § 335(b)(1).
 
 Facts
 
 7
 Hellenic American Neighborhood Action Committee (HANAC) is a nonprofit public service City contractor that has had an unblemished record for over twenty-five years. In March 1996, City officials noticed irregularities in the grant to HANAC of a contract by the Human Resources Administration (HRA). Mayor Giuliani directed the DOI to review all HANAC contracts. The U.S. Attorney's Office also commenced an investigation of HANAC. The Mayor then ordered HRA to terminate two HANAC contracts, pursuant to a contract clause authorizing unilateral termination on thirty days' notice if the City believes it to be in its "best interests."
 
 
 8
 In early April, the Department of Youth Services ("DYS"), another City agency, notified HANAC that its proposal, too, was rejected, because DYS found HANAC nonresponsible based on the ongoing investigations. Immediately after the DYS rejection, Richard M. Bonamarte, Director of the Mayor's Office of Contracts and the City's Chief Procurement Officer, sent a letter ("Bonamarte letter") to the heads of all City agencies stating that "pending further notice, no procurement action of any kind is to be taken involving [HANAC and its affiliates] without first consulting this Office." HANAC, however, was not advised of this letter and did not learn about it until the current litigation.
 
 
 9
 In the meantime, HANAC took an administrative appeal from the termination of its HRA contracts and the DYS determination of nonresponsibility. Eventually, HANAC abandoned these efforts, finding them a "useless endeavor" in light of what it regarded as the City's blanket decision to terminate HANAC's contracts and to preclude HANAC from obtaining new ones until the investigation ended.
 
 
 10
 On April 26, 1996, HANAC commenced an Article 78 proceeding challenging only the termination of its HRA contracts, arguing that the contracts should remain in effect during a dispute resolution process alleged by HANAC to be applicable. HANAC made no claims of a de facto debarment nor did it raise any due process claims in its Article 78 proceeding. On May 8, 1996, the New York State Supreme Court dismissed the proceeding holding that the City had the right to terminate the contracts at will and that the dispute resolution procedure plaintiff tried to invoke did not apply to terminations. HANAC did not appeal.
 
 
 11
 On May 1, 1996, while its Article 78 proceeding was still pending, HANAC filed the present § 1983 suit against the City of New York and various City officials ("City") in the United States District Court for the Southern District of New York (Sotomayor, J.). This suit alleged that the City (a) deprived HANAC of its property interest in its status as an eligible City contractor by de facto debarring it from consideration for City contracts and (b) deprived HANAC of its liberty interest in its good name and reputation by labelling it "nonresponsible" without due process in violation of the Fourteenth Amendment. HANAC sought a preliminary injunction requiring the City to reinstate all its cancelled contracts, and enjoining the City from denying HANAC any further contracts until the outcome of the § 1983 action.
 
 
 12
 Judge Sotomayor granted the preliminary injunction, finding that the defendants' actions (a) constituted a de facto debarment, which deprived HANAC of its property interest as an eligible City contractor without due process, and (b) also deprived HANAC of its liberty interest in its reputation and good name without due process. The district court directed that HANAC be accorded a fair and reasonable opportunity to defend itself pursuant to the debarment procedures provided in the City Charter and the PPB Rules, and be given a chance to clear its name before any of HANAC's contracts could be awarded to a third party.
 
 
 13
 The City now appeals the injunction arguing that: (1) HANAC has no property interest in its status as a City contractor; (2) HANAC's liberty interest in its reputation was not violated by nonresponsibility findings; (3) even if HANAC suffered deprivations of property and liberty interests, the City afforded HANAC the procedures required by the Due Process Clause; (4) HANAC made no showing of irreparable harm, and (5) even if the City violated HANAC's due process rights, the remedy ordered by the district court exceeded its authority.
 
 DISCUSSION
 
 14
 The district court granted HANAC a preliminary injunction on the twin grounds that the City was depriving HANAC of its property and liberty interests without due process of law. We find it unnecessary to address all of the issues raised by the defendants on appeal because the district court's grant of a preliminary injunction should be reversed on other grounds.
 
 
 15
 When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. See Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. Hudson v. Palmer, 468 U.S. at 531, 533, 104 S.Ct. at 3202-03, 3203-04. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process. Id. at 532, 104 S.Ct. at 3203; Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1157-58, 71 L.Ed.2d 265 (1982).
 
 
 16
 The Supreme Court's different treatment of the two situations rests on pragmatic considerations. See Hudson v. Palmer, 468 U.S. at 532-33, 104 S.Ct. at 3203-04. When a deprivation occurs because of a random, arbitrary act by a state employee "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is ... almost ... [invariably] beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Id. at 532, 104 S.Ct. at 3203 (citations omitted). Furthermore, "[that] an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." Id. at 534, 104 S.Ct. at 3204.
 
 
 17
 Although Hudson and Parratt dealt with deprivations of a protectable property interest, the Supreme Court has extended the rationale to deprivations of liberty interests as well. Zinermon v. Burch, 494 U.S. 113, 132, 110 S.Ct. 975, 986-87, 108 L.Ed.2d 100 (1990). There is, therefore, no need to distinguish between HANAC's claims based on its property interest and its liberty interest.
 
 
 18
 In HANAC's case, the alleged deprivation of a protected property and liberty interest without due process of law occurred because of a random and arbitrary act--the de facto debarment. HANAC complains that the Bonamarte letter instructing agency heads to reject all HANAC proposals and to cancel all existing HANAC contracts as they came up for renewal constituted a de facto debarment without due process in violation of the Fourteenth Amendment. It makes no claim that the due process violation was caused by an established state procedure, such as the City Charter or PPB Rules. To the contrary, HANAC argues that state officials acted in flagrant violation of the City Charter and PPB Rules. HANAC's brief on appeal agrees with the district court that HANAC's due process rights were violated "when the Mayor--not OATH--effected a de facto debarment of HANAC without according any of the protections set forth in § 335 [of the City Charter] and on the grounds not permitted by the applicable state law." Brief of Appellee at 11. Thus, HANAC's claims can survive only if New York does not provide adequate postdeprivation procedures. This, however, is not the case.
 
 
 19
 We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation. Interboro Inst., Inc. v. Foley, 985 F.2d 90, 93 (2d Cir.1993); McDarby v. Dinkins, 907 F.2d 1334, 1338 (2d Cir.1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir.1987); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.1984). Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners. "[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of their claim], and where a triable issue of fact is raised, the petitioner may obtain a trial." Moccio v. New York State Office of Court Admin., 95 F.3d 195, 202 (2d Cir.1996). Additionally, constitutional issues can be decided in Article 78 proceedings. Christ the King Reg. High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir.1987). An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit. Hudson v. Palmer, 468 U.S. at 535, 104 S.Ct. at 3204-05.
 
 
 20
 HANAC did indeed start an Article 78 proceeding to challenge the termination of its HRA contracts, but, significantly, it failed to raise its de facto debarment claim or due process claims in that proceeding. Inexplicably, HANAC filed a § 1983 suit alleging such claims only five days after the original Article 78 proceeding was instituted. If, for some reason, HANAC had not crystallized its debarment and constitutional theories before the Article 78 proceeding was instituted, HANAC was free to amend its petition in the state proceeding, or indeed, to institute a second Article 78 proceeding. See Alfaro Motors, Inc. v. Ward, 814 F.2d at 886.
 
 
 21
 HANAC cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month statute of limitations. "Where, as here, Article 78 gave ... a meaningful opportunity to challenge [the debarment] ..., [HANAC] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity." Giglio, 732 F.2d at 1135.
 
 
 22
 HANAC can find little comfort in the general rule that § 1983 allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies. Kraebel v. New York City Dep't of Hous. Preservation and Dev., 959 F.2d 395, 404 (2d Cir.1992); see also Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481-82, 5 L.Ed.2d 492 (1961), overruled on other grounds by Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Patsy v. Board of Regents, 457 U.S. 496, 500-01, 102 S.Ct. 2557, 2559-60, 73 L.Ed.2d 172 (1982). Our decisions holding that an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause are consistent with this general rule. See Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir.1988). If there is a constitutional violation, federal courts are available to hear § 1983 suits despite the availability of adequate state procedures. Monroe v. Pape, 365 U.S. at 183, 81 S.Ct. at 481-82. Parratt, Hudson and their progeny, however, emphasize that there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty. Zinermon v. Burch, 494 U.S. at 132, 110 S.Ct. at 986-87; Parratt v. Taylor, 451 U.S. at 541, 101 S.Ct. at 1916; Hudson v. Palmer, 468 U.S. at 531, 533, 104 S.Ct. at 3202-03, 3203-04.
 
 
 23
 In sum, we find that it is unnecessary to address the other issues raised on appeal. Even if HANAC has a protectable property and liberty interest--on which we express no opinion--HANAC, because of the availability of an Article 78 proceeding, was not deprived of such property or liberty without due process of law.
 
 CONCLUSION
 
 24
 The order of the district court is REVERSED and REMANDED with instructions, consistent with this opinion, to deny plaintiff's request for a preliminary injunction and dismiss plaintiff's complaint.