David **FERNANDEZ**, Robert Perrota, Eugene C. Petora, Lawrence R. Bartolotti, and James Wilkinson, Plaintiffs,

v.

The **CITY OF POUGHKEEPSIE, NEW YORK**, and Collette Lafuente, individually, Defendants.

No. 98 Civ. 5545(BDP).

United States District Court, S.D. New York.

Sept. 7, 1999.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for plaintiffs.

Robert David Goodstein, Goodstein & West, New Rochelle, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs, five police officers with the Poughkeepsie police department, commenced this action against the City of Poughkeepsie (the "City"), and Mayor of the City, Collette LaFuente, pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment Rights to petition the government and to freedom of association, and their Fourteenth Amendment right to due process under the United States Constitution.[1] Plaintiffs also assert pendent state law claims, including violations of their property right under New York Civil Service Law, Chapter 134 of the laws of 1997. Before this Court is Defendant City of Poughkeepsie and Collette LaFuente's motion to dismiss plaintiffs' second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the defendants' motion is granted in part and denied in part.

### Background

A complaint may only be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when it appears beyond doubt that the plaintiff cannot prove any set of facts in support of her claims which would entitle her to relief. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). This standard is applied with even greater force where the plaintiff alleges civil rights violations. *Id.* In deciding a 12(b)(6) motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York*, 143 F.3d 31, 36 (2d Cir.1998). The following facts are construed accordingly.

From August of 1994 until December of 1997, each of the plaintiffs served in the Poughkeepsie Police Department's Neighborhood Recovery Unit ("NRU"), a parole unit. The duties they performed while in this unit included investigating homicides, shootings, prostitution and drug offenses; working with confidential informants, and participating in undercover narcotics investigation. Plaintiffs allege that although they performed functions identical to those executed by individuals designated as detective, they were wrongly denied the title of detective and the attendant salary increase. They assert that under Chapter 134 of the New York Civil Service Law, they were entitled to be made detective because for more than eighteen months, they performed all the duties of detective.[2]

Chapter 134, passed on June 25, 1997, provides in relevant part:

(ii) ... any person who has received permanent appointment to the position of police officer or deputy sheriff and is temporarily assigned to perform the duties of detective or investigator shall, whenever such assignment to the duties of a detective or investigator exceeds eighteen months, be permanently designated as a detective or investigator and receive the compensation ordinarily paid to persons in such designation.

(iii) ... any person temporarily assigned to perform the duties of detective

---

1. In addition to the City of Poughkeepsie and the City's Mayor, plaintiffs originally sued the Police Benevolent Association ("PBA") and its President Derrick Storzieri. By stipulation and order dated February 5, 1999, the action was discontinued without prejudice and without fees or costs against the PBA and Storzieri.

2. On a date subsequent to the filing of the original complaint, plaintiffs' Robert Perrotta and Eugene C. Patora were transferred to the Detective Division of the City of Poughkeepsie' Police Department where they received the title of detective. Affidavit of Jonathan Kornblatt.

within the period commencing September twenty-third, nineteen hundred ninety-three through and including the date upon which this paragraph shall have become a law and who has not been designated as a detective and who has not been subject to an examination for which there is a certified eligible list, shall be permanently designated as a detective whenever such assignment to the duties of detective exceeds eighteen months.

McKinney's Consol. Laws of N.Y., Civil Service Law, § 58(c)(4). Plaintiffs allege that as a result of the enactment of Chapter 134, defendants knew or should have known that each of the plaintiffs was statutorily entitled to be designated as a "detective" and to receive a substantial increase in salary.

Plaintiffs allege other violations of their rights by defendants who, plaintiffs assert, deprived plaintiffs of what they were due under New York Civil Service law and their Collective Bargaining Agreement ("CBA"). They assert that defendants knew or should have known that each of the plaintiffs was by contract entitled to receive pursuant to Article XVI, Section 12 of the CBA, compensation for "out-of-title" work for the detective duties they performed. Plaintiffs accuse the City, acting through its Mayor, defendant LaFuente, of working in concert with the PBA in refusing to implement the provisions of Chapter 134 of the Laws of 1997.

Plaintiffs allege that the President of the PBA, Derrick Storzieri, was motivated by his personal objective of securing favorable duty assignments for himself and other members of the PBA. In addition, plaintiffs allege, Storzieri and the PBA's inaction resulted in "financial advantage" to the City, presumably because it did not have to pay plaintiffs higher salaries. Plaintiffs allege that Mayor LaFuente hoped to gain politically by preventing them from being appointed detective. They allege, *inter alia,* that the PBA repeatedly refused to make available to them a copy of the PBA collective bargaining agreement; and entered into a secret agreement with the former Chief of Police in which both agreed that no police officer assigned to the NRU would ever be designated as a detective.

### 1. Due Process

Plaintiffs seek to recover under § 1983, claiming defendants deprived them of property without due process in violation of the Fourteenth Amendment. Plaintiffs allege that under Chapter 134, they possessed a property interest in the designation of detective and its attendant salary increase, and had a property right under Article XVI, Section 12 of the Collective Bargaining Agreement to the salary increase attributable to "out-of-title" pay. Assuming for the purposes of this motion, without deciding, that the plaintiffs had a property right in the position of detective and a property interest in the salary increase, their due process claim must fail because adequate post-deprivation procedures were available to plaintiffs.

■ Due process has two indispensable components, notice and a post-deprivation opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As the Supreme Court stated in *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984),

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional ... deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

Defendants note that plaintiffs had three adequate post-deprivation remedies available to them: (1) grievance and arbitration

under the CBA, (2) a petition pursuant to CPLR Article 78, and (3) Civil Service Law § 209–a.

■ Because this case involves an alleged unauthorized, arbitrary act by Poughkeepsie city officials, an Article 78 proceeding would have been an adequate forum for plaintiffs to pursue their claims. Where a property right was lost because of a random and unauthorized act by a state actor, rather than through an established state procedure, the existence of an adequate postdeprivation state remedy for the loss affords due process. *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988).

■ An Article 78 Proceeding is "a perfectly adequate postdeprivation remedy in the present situation." *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996) (involving random and arbitrary act by city officials). Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners. *Id.* "'[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of their claim], and where a triable issue of fact is raised, the petitioner may obtain a trial.'" *Id.* (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 202 (2d Cir.1996)).

■ Plaintiffs argue that Article 78 remedies would not provide them with the remedies they seek in this federal suit because they are limited to back pay and reinstatement, and the issues addressed in an Article 78 proceeding "would not encompass all of the merits of Plaintiffs' constitutional claims." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 15. However, an Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit. *Hudson v. Palmer*, 468 U.S. at 535, 104 S.Ct.

3194. Additionally, constitutional issues can be decided in Article 78 proceedings. *Hellenic*, 101 F.3d at 881; *Christ the King Reg. High Sch. v. Culvert*, 815 F.2d 219, 224–25 (2d Cir.1987). Thus, plaintiffs' § 1983 claim that their Fourteenth Amendment right to due process was violated is dismissed.

2. *First Amendment Freedom of Association & Right to Petition Government for Redress of Grievances*

Plaintiffs assert that defendants violated their First Amendment rights to freedom of association and to petition the government for redress of grievances.

a. Freedom of Association

■ The United States Constitution affords protection to two distinct types of association, "intimate association" and "expressive association." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *City of Dallas v. Stanglin*, 490 U.S. 19, 23–25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989); *Sanitation and Recycling Industry, Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997). This case involves the latter type.

■ The second type of associational freedom—"expressive association"—protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances—the so-called "political" associational rights. *Sanitation and Recycling*, 107 F.3d at 996. Plaintiffs rely on *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), which held that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." 468 U.S. at 622, 104 S.Ct. 3244. To be cognizable, the interference with associational rights must be "direct and substantial" or "significant."

*Fighting Finest, Inc. v. Bratton,* 95 F.3d 224, 228 (2d Cir.1996).

Plaintiffs assert that their right to associate was infringed because their membership in the NRU, "which endeavored a pursuit for political and social ends and benefitted the public interest," resulted in their being "denied the designation of detective," the requisite salary increase and out-of-title pay. Plaintiffs' Opposition at 18. In further support of this claim, plaintiffs allege that defense counsel Goodstein disclosed to them an agreement between the Chief of Police and the former PBA president that members of the NRU would never be considered for appointment to detective, regardless of the functions or duties they performed. The Mayor and the City went along with this agreement, plaintiffs assert. In other words, according to plaintiffs, defendants wrongfully determined that their association with NRU precluded their designation as detectives, even though they were entitled to this designation.

### b. Redress of Grievances & Retaliation

■ To establish a retaliation claim under § 1983, a plaintiff "initially [must] show that [his] conduct was protected by the first amendment," and that defendants' conduct was motivated by or substantially caused by plaintiffs' exercise of free speech. *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *see also Mount Healthy City Sch. Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 284–85, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (government employee stated claim for wrongful discharge in retaliation for engaging in protected speech); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 40–45 (1st Cir.1992) (plaintiff stated claim that officials denied permits in retaliation for political views of plaintiff).

■ The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment. *Gagliardi,* 18 F.3d at 194; *see also United Mine Workers v. Illinois Bar Assoc.,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (the right "to petition for a redress of grievances [is] among the most precious of liberties safeguarded by the Bill of Rights" and is "intimately connected . . . with the other First Amendment rights of free speech and free press").

■ The factual basis for plaintiffs redress of grievances and First Amendment retaliation claims is not entirely clear. It appears that plaintiffs base their First Amendment redress of grievances claim on their assertion that the PBA and its president Storzieri failed to effectively pursue their grievance and on the allegation that Mayor LaFuente agreed to refuse to hear their request for a detective designation. They further allege that they were retaliated against after they sought the help of the PBA in pursuing their constitutional and contractual claims by being denied access to the Collective Bargaining Agreement and by the PBA's failure to fund any legal action on their behalf. Plaintiffs allege that defendants LaFuente and the City refused to abide by state law and/or the CBA and in so doing refused to accord plaintiffs the detective designation and detective salary.

Although plaintiffs' complaint is not clear, this Court concludes that plaintiffs adequately have pleaded the requisite nexus between the exercise of their First Amendment rights and subsequent retaliatory conduct by the defendants. Plaintiffs' complaints to the PBA and their effort to secure the PBA's assistance in pursuing legal redress of their grievances against the City is conduct clearly protected by the First Amendment. The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint. *Gagliardi,* 18 F.3d at 195. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind . . . may be averred generally." *See id.* While a bald and

uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred. *Id.; see also Harris v. Eichbaum,* 642 F.Supp. 1056, 1065 (D.Md.1986) (if plaintiff alleges facts regarding defendant's state of mind that, if proven, constitute a constitutional violation, the parties should proceed to discovery). Plaintiffs allege that,

> In conjunction with the PBA and Storzieri, Defendant LaFuente and *inter alia,* the City, refused to abide by state law and/or the Collective Bargaining Agreement and in so doing refused to accord Plaintiffs the detective designation and detective salary. (Complaint ¶ "17"). In all, Defendants PBA and Storzieri, aided and abetted by the City and LaFuente, have failed to effectively pursue Plaintiffs' claims in this matter.

Plaintiffs' Opposition at 19–20.

Defendants' motion to dismiss plaintiffs' claim pursuant to § 1983 for violation of their First Amendment rights is denied. In addition, in the absence of any appropriate factual predicate, it is premature to determine whether individual defendant Collette LaFuente is entitled to qualified immunity.

### CONCLUSION

Fore the foregoing reasons, defendants' Motion to Dismiss plaintiffs' Second Amended Complaint is granted on plaintiffs' due process claims and denied on plaintiffs' claims of First Amendment violations. The parties are directed to appear before the Court on September 16, 1999, at 9:15 a.m. for a Rule 16 Conference.

**SO ORDERED:**