Michael C. CLINCH, Plaintiff,

v.

Thomas SPENCE, individually, Robert Clearwater, individually, Robert Kampf, individually, Barbara Sause, individually, James Stuart, individually, and The Town of Hyde Park, N.Y., Defendants.

No. 01 CIV. 3202(CM).

United States District Court,
S.D. New York.

June 26, 2002.

See also 277 A.D.2d 451, 716 N.Y.S.2d 706.

Kim Berg, Lovett & Gould, White Plains, New York, for plaintiff.

S. Pitkin Marshall, New York City, for defendants.

**MEMORANDUM, DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

McMAHON, District Judge.

Plaintiff Michael Clinch ("Clinch") brings this action alleging deprivation of his rights guaranteed to him by the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983. Plaintiff seeks compensatory damages against all Defendants and punitive damages against Defendants Thomas Spence ("Spence"), Robert Clearwater ("Clearwater"), Robert Kampf ("Kampf"), Barbara Sause ("Sause") and James Stuart ("Stuart"). Clinch claims that Defendants deprived him of his property rights in his position as Chief of Police of Hyde Park without Due Process, and thus caused him to suffer the impairment and destruction of his professional police career, embarrassed, humiliated and degraded him, and caused him substantial financial damages.

Plaintiff filed a motion for partial summary judgment as to liability pursuant to Fed.R.Civ.P. 56. Defendants moved for summary judgment pursuant to Fed. R.Civ.P. 56(b).

## FACTS PERTINENT TO THE MOTION

Clinch was the duly appointed Chief of Police of the Town of Hyde Park, New York at all relevant times until August 3, 1999. Plaintiff held the position of Chief on a tenured, permanent, competitive civil service basis.

Defendant Spence, at all times relevant to this action, was the duly elected Supervisor of the Town of Hyde Park and a member of the Town's Police Commission. Defendants Clearwater, Kampf, Sause and Stuart, at all times relevant to this action, were duly elected members of the Town Board of the Town of Hyde Park.

Pursuant to Sections 150 and 155 of the New York State Town Law, the Town Board is specifically authorized and empowered to hear and determine disciplinary matters involving any member of the Town's Police Department, and in that connection to impose disciplinary punishment up to and including termination of employment.

In or about January 1997, the Town Board asked Clinch to turn over certain audiotapes that were used to record, in the ordinary course of business, incoming and outgoing conversations on the several telephone lines serving the Police Department. Defendants Statement Pursuant to Local Civil Rule 56.1 ("Def.Facts") at ¶ 2. Defendants claim that the Police taping system was comprised of 31 tapes numbered to coincide with the day of the month plus three or four extra tapes. Def. Facts at ¶ 6. Clinch claims that there were not this many tapes, but does not provide an exact number of how many tapes existed. Plaintiffs Response to Defendants Statement Pursuant to Local Civil Rule 56.1 ("Pl. Resp.Facts") at ¶ 6. On or about January 10, 1997, after Clinch was advised of the Town's request for the tapes, he contacted his attorney and sought an injunction against the Town. PlResp. Facts at ¶ 4,

Defendants contend that between mid-January and mid-March 1997, Clinch carried approximately 15 of the tapes into his office and took them out of the normal duty rotation. Def. Facts at ¶ 7. Defendants also contend that Clinch told his Lieutenant, James McKenna, to lie about these tapes if asked about them by the Board. Id. at ¶ 8.

In mid-March, Clinch obtained a preliminary injunction preventing the Town Board from seizing the police tapes. Id. at ¶ 9; Pl. Response Facts at ¶ 8. In July 1997, the injunction was lifted and Clinch was ordered by the Supreme Court, Duchess County, to turn over the tapes. Id. at ¶ 9. At that time, defendants contend, and plaintiff contests, that he asked McKenna to erase the remaining tapes and McKenna refused. Def. Facts at ¶¶ 12–13.

McKenna has testified that one or two days after Clinch asked him to erase the tapes, he saw Clinch take several of the tapes into his own office. Thereafter,

McKenna and another officer, Officer Bill Truitt, heard the sound of the erasing machine at work. Def. Facts at ¶ 14. Sometime after this alleged incident, Clinch directed a subordinate officer, Jeffrey Lee, to bring seventeen tape boxes to Defendant Spence (not to the Town Board). Pl. Response ¶ 16. Six of these tapes were blank or erased; one tape box was empty. Def. Facts at ¶ 16.

In the late summer of 1997, McKenna became concerned that Clinch had erased the tapes. Def. Facts at ¶ 17. He talked to former Hyde Park Police Chief James Dunnigan about the matter. Id. In the fall of 1997, Town Board members claim that they heard rumors that the tapes had been tampered with. Id. at ¶ 19. They did not, allegedly because of technical difficulties, audit the tapes or determine if they had been tampered with. Id. at ¶ 20.

In mid-winter 1997–1998, in connection with other matters, Truitt disclosed to the Town Board that he had information that Clinch erased the tapes. Id. at ¶ 21. In January 1998, both Truitt and McKenna spoke with Tom Mahar, the Town Attorney, about the tapes and their belief that Clinch had tampered with them. Pl.Resp. Facts at ¶ 22. In March 1998, Mahar drafted and presented affidavits to Truitt and McKenna. The affidavits restated what they had disclosed about the alleged erasures. Def. Facts at ¶ 23. McKenna and Truitt signed their affidavits in or about June 1998. Id. at ¶ 24. At about the same time, the Town Board retained investigators to determine whether the tapes had been erased. Def. Facts at ¶ 26. The investigators reported that six of the tapes were blank. Id. at ¶ 27.

On June 19, 1998, the Town Board voted to put Clinch on administrative leave. In July 1998, the Town Board suspended Clinch with full pay and brought disciplinary charges against him. Def. Facts at

¶ 29. Clinch contends that he was at first put on leave without pay for thirty days, and then his suspension was changed to one with pay. Pl. Response Facts at ¶ 29.

The Town Board charged Clinch with Misconduct, Insubordination and Conduct Unbecoming an Officer, specifically alleging that he had first asked his Lieutenant to erase the tapes and then had erased them himself. Def. Facts at ¶ 30.

On August 10, 1998, the Town Board appointed Susan McKenzie as a hearing officer to hear the charges against Clinch. *Id.* at ¶ 31. Over a period of 10 months and through numerous hearing sessions, the charges were heard. *Id.* at ¶ 32. Among the Town Board members, only Spence testified for the Town. Other Town Board members were called as witnesses by Clinch himself. *Id.* at ¶ 33.

On July 27, 1999, McKenzie issued a Report and Recommendation finding Clinch "guilty of misconduct, insubordination and conduct unbecoming an officer in that on or about July 7, 1997, he requested Lt. James McKenna of the Town of Hyde Park Police Department to erase the tapes which has been ordered to be delivered to the Town Board." Def.Ex. 59. The Hearing Officer found that there was "insufficient proof" to sustain the other charges proffered. The Hearing Officer's report recommended that Clinch be terminated from his position as Chief of Police. *Id.* Defendants were not bound by the Hearing Officer's recommendations or findings, but were required to come to their own decision. Pl. Response Facts at ¶ 34.

By resolution of August 3, 1999, the Town Board terminated Clinch from his position with the Police Department. Spence abstained from the vote because he had testified for the Town during the hearing sessions. Def. Facts at ¶ 37. On or about August 3, 1999, Clinch retired and sought retirement compensation. *Id.* at

¶ 38. With the exception of possibly one month in July 1998, Clinch was paid his salary throughout the period prior to his termination. *Id.* at ¶ 39.

On or about August 17, 1999, Clinch commenced an Article 78 proceeding in the New York State Supreme Court, Duchess County, challenging his administrative conviction and termination. On or about November 18, 1999, the Duchess County Supreme Court transferred Plaintiff's Article 78 proceeding to the Appellate Division, Second Department, pursuant to New York CPLR 7804(g).

On November 27, 2000, the Appellate Division, Second Department granted Plaintiff's Article 78 petition and "annulled" the "determination that the petitioner is guilty of, *inter alia,* misconduct and to [sic] terminate his employment." *Clinch v. Town of Hyde Park,* 277 A.D.2d 451, 716 N.Y.S.2d 706 (2d Dep't 2000). The Appellate Division remitted the matter to the Town with a direction that it calculate "back pay and benefits to which the petitioner may be entitled." *Id.* The Appellate Division further ruled that because Plaintiff filed for retirement benefits following his unlawful termination of employment, "it was unnecessary to remit the matter for a new hearing before a different panel." *Id.*

Clinch moved to reargue and amend the Appellate Division's decision. On March 5, 2001, the Appellate Division denied this motion. Clinch then moved for leave to appeal the decision. On March 29, 2001, the New York State Court of Appeals denied Clinch's application for leave to appeal from the final judgment of the Appellate Division. Both of these motions were briefed by plaintiff.

On April 17, 2001, Clinch filed his Complaint in this action. He alleges that the Defendants illegally voted to terminate

him, and then was deprived of a "property right" in his job when the state courts failed to reinstate him. Clinch also claims that his professional police career was impaired and destroyed, and contends that he has been embarrassed, publicly humiliated and degraded. Complaint at 8. Clinch claims that the illegal termination and the failure of the Article 78 court to reinstate him as Chief of Police constitute a violation of his Fourteenth Amendment rights to procedural due process. Plaintiff seeks punitive and compensatory damages, attorney's fees and costs and any further relief the Court deems proper. *Id.* at 8–9.

On February 28, 2002, Clinch moved for partial summary judgment as to liability. Plaintiff argues that he had a property right in his position as Chief of Police with respect to which he could not be deprived without a pre-deprivation hearing. Of course, he had a pre-deprivation hearing. But he claims that it was "tainted by bias, pre-disposition, and unlawful *ex parte* communications between the witnesses and the 'judges.'" Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment at 7. Plaintiff argues that his Article 78 post-deprivation proceeding was inadequate as a matter of law, and in violation of the Constitution, because it did not provide him with the adequate and meaningful remedy required by the Fourteenth Amendment—*i.e.*, the Court did not order him reinstated or remit the matter for a new hearing. Clinch argues that Appellate Division's award of back pay was meaningless because those monies would have to be turned over to the New York State Retirement System as reimbursement.

On March 5, 2002, Defendants moved for summary judgment. Defendants claim that Clinch has no property interest deserving of constitutional protection, his claim to the job having already been re-jected by the state courts. They also argue that plaintiff is collaterally estopped from pursuing this action. Defendants also claim that the Town Board members are protected by absolute judicial immunity, that the Town Board members also enjoy qualified immunity, and that no colorable claim lies against defendant Spence because he did not even vote during the pre-deprivation process.

Defendants, in their Opposition to Plaintiff's Motion for Partial Summary Judgment, argue that, under the *Rooker–Feldman* doctrine, this Court is without subject matter jurisdiction. I am required to resolve a challenge to this Court's subject matter jurisdiction prior to considering any other question. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990); *Mosley v. Cozby,* 813 F.2d 659, 660 (5th Cir.1987) (noting that before addressing the merits of any claim, a federal court must examine the basis of federal question jurisdiction); *Birmingham v. Ogden,* 70 F.Supp.2d 353, 358 (S.D.N.Y.1999).

## DISCUSSION

### I. *Rooker–Feldman*

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction, *Moccio v. New York State Office of Court Administration,* 95 F.3d 195 (2d Cir.1996), and may be raised at any time by any party, or *sua sponte* by the court, *id. See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

The *Rooker–Feldman* doctrine stands for the proposition that the federal district courts have no authority to review final judgments of state courts in judicial

proceedings. *Narey v. Dean,* 32 F.3d 1521, 1524 (11th Cir.1994); *Birmingham,* 70 F.Supp.2d at 361. Federal Appellate review of state court judgments is available only in the Supreme Court. 28 U.S.C. § 1257; *Van Harken v. City of Chicago,* 103 F.3d 1346, 1349 (7th Cir. 1997); *Birmingham,* 70 F.Supp.2d at 361.

█ Under *Rooker–Feldman,* a district court is without subject matter jurisdiction if a federal claim is "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. "A federal claim is 'inextricably intertwined' with the underlying judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Birmingham,* 70 F.Supp.2d at 361 (citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). The term "inextricably intertwined" has been interpreted to be co-extensive with the law of preclusion. *Id.* (citing *Moccio,* 95 F.3d at 199). Thus, "where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio,* 95 F.3d at 199.

█ Courts have identified several factors to guide application of the *Rooker–Feldman* "inextricably intertwined" standard. These include, but are not limited to: "whether the case brought in federal court by the party unsuccessful in state court amounts merely to a recasting of losing claims under a semblance of federal case causes of action not decided or interposed in the prior state proceeding, so that 'in essence,' the district court is being called upon to undertake appellate review of the state court decision," *Harris v. New York State Department of Health,* 202 F.Supp.2d 143, 162 (S.D.N.Y.2002) (citing

*Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303,) or (2) "whether the invocation of the federal court's jurisdiction effectively seeks a 'direct review' of a state court judgment," *id.* (citing *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engrs.,* 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). As I stated in *Birmingham:*

> [T]he Second Circuit [in *Moccio* ] concluded as follows: a plaintiff who has availed himself of a state forum (i.e., an Article 78 proceeding), where constitutional challenges to the fact-specific application of a state law or regulation to an aggrieved litigant could be considered, could not fail to litigate those constitutional issues in the state forum and then expect to maintain a lawsuit for damages in a federal district court. The Court then found that issues essential to both Moccio's causes of action under § 1983 were actually and necessarily decided adversely to him in the Article 78 proceeding, so that any inquiry into matters comprehended within the Article 78 judgment would run afoul of the rule forbidding federal courts from making determinations that undermine the validity of a state court judgment.

*Id.,* 70 F.Supp.2d at 361.

█ In his Article 78 petition to set aside and declare "arbitrary, capricious and otherwise unlawful" the August 3, 1999 Town Board determination terminating his employment, Clinch sought the same determination he requests in the present action—a determination that the Town Board acted illegally in voting to fire him. The Appellate Division, Second Department, granted Clinch's Article 78 petition, annulling the Town Board's determination. It would seem that Clinch should have no reason to even bring this action—he has already succeeded in state court. Clinch, however, claims that the court did

not award him the full relief that he sought. The court did remit the case for a calculation of back pay and benefits, but it did not retroactively reinstate him as Chief of Police, because he had officially retired almost a year and a half earlier. Clinch moved to reargue and amend the court's decision to provide for his retroactive reinstatement as Chief of Police of Hyde Park. This motion was denied. Clinch moved for leave to appeal, arguing that the court erred in not reinstating him to his former position. The Court of Appeals for the State of New York denied this motion.

Clinch is obviously unhappy with the results of his extensive litigation in the state court. · But it is not possible to give him what he wants—damages from the individual Town Board members in lieu of his reinstatement as Chief of Police—without running afoul of *Rooker–Feldman.* Clinch seeks monetary relief from the Town and the individual Board members to compensate him *for the state court's decision not to reinstate him to his former position as Chief of Police,* and for the resulting impairment of his professional career, public embarrassment and financial damages. Essentially, Clinch asks this Court to review the state court's decision that plaintiff did not have a right to reinstatement, and to determine that the state court was incorrect. This is precisely the type of examination that *Rooker–Feldman* prevents.

In order for Clinch to prevail under a procedural due process claim, he must show that the "procedural safeguards ... established by the state are insufficient to protect [his] rights." *Moccio,* 95 F.3d at 200 (quoting *Valmonte v. Bane,* 18 F.3d 992, 1002 (2d Cir.1994)). In this case, as in *Moccio,* the safeguard provided by the state to Clinch was the Article 78 proceeding itself. To conclude that Clinch was deprived of due process by his termination

proceeding would require this Court to find that the protections offered him by the Article 78 proceeding, and by the Court of Appeals in entertaining his motion for leave to appeal, were insufficient to satisfy constitutional due process. Again, as the Second Circuit found in *Moccio,* such a determination "would run directly contrary to the prohibition in *Feldman* against lower federal court jurisdiction over 'challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Moccio,* 95 F.3d at 200 (quoting *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317).

■ Whether Clinch is entitled to reinstatement has already been decided. Plaintiff's due process claim is predicated on an assumption that he has a continuing property interest in the office of Police Chief that survives both (i) his removal by the Town Board and (ii) his retirement. But the state courts have held otherwise, and that ends this lawsuit. Plaintiff suffered no damage from the failure to reinstate him unless he has some continuing property· interest that deserves constitutional protection. *Murray v. Board of Educ. of City of New York,* 984 F.Supp. 169 (S.D.N.Y.1997). Whether such a property interest exists is a question of state law. *Summers v. Civis,* 420 F.Supp. 993 (W.D.Okla.1976). That Clinch enjoys no such continuing property interest has been decided and affirmed by the state courts.

Clinch further contends that the question raised in the present action "could not have been litigated in the Article 78 proceeding since the question of the inadequacy of the remedy did not ripen until after that proceeding deprived Plaintiff of a meaningful remedy". *Id.* This is just not true. Plaintiff, in his Motion to Reargue and Amend, and his Motion for Leave to

Appeal raised the very issue he now seeks to address—whether or not he had any rights to reinstatement in light of his retirement. There is nothing in the record that supports the proposition that the considerable process afforded to Clinch during the Article 78 proceeding was constitutionally insufficient.

*Rooker–Feldman* clearly states that federal district courts have no authority to review final judgments of state courts in judicial proceedings—such review is available only in the Supreme Court of the United States. Yet that is exactly what Clinch would have the Court do. Hence, this case must be dismissed for lack of subject matter jurisdiction.[1]

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Motion for Partial Summary Judgment is denied.

The clerk of the court is directed to close this case.

This constitutes the decision and order of the court.

---

1. Were I to have jurisdiction, I would conclude that Clinch enjoyed adequate pre- and post-deprivation remedies (assuming arguendo that he has a constitutionally-protected interest in his old job), and thus suffered no civil rights violation. *See Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2d Cir.1996).