**Preben JESSEN, Plaintiff,**

v.

**Jim CAVANAUGH, individually, Thomas F. Doherty, Jr., individually, Vicki C. Ford, individually, Gary C. Delvecchio, individually, and the Town of Eastchester, Defendants.**

**No. 96 CIV. 4848(BDP).**

United States District Court, S.D. New York.

June 26, 1998.

---

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

James M. Flannery, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiff Preben Jessen commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his Equal Protection, Due Process,[1] and First Amendment rights in connection with the termination of his position as Lake Isle Park Superintendent because of his association with a perceived political rival of the current Town Supervisor and Town Board of the Town of Eastchester ("the Town"). During the

---

1. Subsequent to the filing of the complaint, plaintiff withdrew his Due Process claim.

events giving rise to this action, defendant Cavanaugh was the Town Supervisor, and defendants Doherty, Ford, and Delvecchio were members of the Town Board. The defendants have moved for summary judgment and dismissal of Jessen's complaint on the basis, among others, that, under the *Rooker–Feldman* doctrine, the Court lacks subject matter jurisdiction over plaintiff's claims. The individual defendants have also asserted the defenses of absolute and qualified immunity. For the reasons that follow, the defendant's motion is granted.

## BACKGROUND

The Town owns and operates Lake Isle Park ("the Park"), a recreational facility. In May, 1984, Preben Jessen was appointed by the Town Board to a two year term as Director of Park Operations, an unclassified civil service position. In 1987, the positions of Director and Deputy Director of Lake Isle Operations were reclassified by the Westchester County Department of Personnel to competitive civil service positions with the titles of Park Superintendent and Deputy Park Superintendent, respectively.

Jessen obtained the highest score on the Competitive Civil Service examination and was appointed Park Superintendent in December 1987. Jessen's duties included responding to inquiries from both the Town Board and from the general public, participating in drafting and negotiating of contracts and licensing agreements, and supervising employees.

During Jessen's tenure as Park Superintendent, he developed a relationship with then Democratic Town Supervisor Jim Doody, who had defeated Jim Cavanaugh, a Republican, in a previous election. In addition to monthly staff meetings, Jessen and Doody frequently had lunch together and Doody regularly met with Jessen at the Park. Doody was perceived by Jessen as being Cavanaugh's political opponent, and Jessen asserts that Cavanaugh and the other Republican Town Board members retaliated against Jessen due to his perceived alliance with Doody.

In late January or early February 1996, Cavanaugh discussed with the Town Comptroller and Personnel Officer the possibility of privatizing the management of the Park in order to save money. Cavanaugh subsequently contacted the Director of Westchester County Department of Personnel to discuss these matters. After receiving a formal legal opinion from the Town Labor Counsel confirming the legality of the privatization and speaking individually with defendants Doherty, Ford, Delvecchio, and another Town Board member, Cavanaugh scheduled an executive session of the Town Board for February 29, 1996 to interview a prospective management firm, Carf Caterers, Inc. ("Carf"), which since 1983 had operated a restaurant and catering facility at the Park.

On March 1, 1996, Cavanaugh advised Jessen that the Town Board would likely vote at its March 5, 1996 meeting to privatize the management of the Park and abolish the positions of Park Superintendent and Deputy Park Superintendent. Jessen alleged that Cavanaugh told him to clean out his desk and vacate his office by the close of business March 1, even though the Town Board's vote would not occur until March 5.

On March 5, 1996, the Town Board approved the proposal to privatize the management of the Park and abolish the Superintendent and Deputy Superintendent positions. Immediately prior to the vote, the Town Attorney, alleged by Jessen to be a political rival of Doody, advised the Board that the privatization was legal and could be carried out for cost saving reasons.

On June 26, 1996, Jessen commenced this action. Jessen claims that his First Amendment rights of freedom of association and free speech were violated because his position was eliminated in retaliation against James Doody for Doody's partisan political activities or, stated differently, in retaliation against Jessen for his association with Doody.[2] Finally, Jessen contends that the defendants' alleged retaliatory conduct violated his Fourteenth Amendment right to Equal Protection.

---

**2.** Alternatively, plaintiff contends that he was retaliated against for having publicly criticized

Carf's performance as a caterer-licensee for the Town.

On July 1, 1996, Jessen commenced a special proceeding, pursuant to Article 78 of the New York Civil Practice Law and Rules, to set aside the Board's decision and for reinstatement of his position with back pay and seniority benefits. Jessen claimed, among other things, that the Town had acted in bad faith and without any legitimate economic motivation in abolishing his position, in violation of Article V, § 6 of the New York State Constitution. In the Article 78 proceeding, Jessen presented no claim specifically denominated as a First Amendment claim, although the hearing delved extensively in the factual circumstances surrounding the abolition of his position.

Following the adjudication of the Article 78 proceeding, the Supreme Court, County of Westchester, (Silverman, J.) issued a decision and judgment dated March 7, 1997, denying Jessen's petition and concluding that the defendants' actions were substantively valid and procedurally proper. The Court specifically found that Jessen had "not demonstrated a lack of good faith" on the part of the Town in the abolition of his position.

## DISCUSSION

■ Under the *Rooker–Feldman* doctrine, district courts lack subject matter jurisdiction over cases that effectively seek direct or indirect review of state court judgements. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Gentner v. Shulman*, 55 F.3d 87 (2d Cir.1995). The prohibition on district court review of state court judgments extends to cases that are "inextricably intertwined" with a state court's determinations. *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

Our Court of Appeals recently applied the *Rooker–Feldman* doctrine in *Moccio v. New York State Office of Court Administration*, 95 F.3d 195 (2d Cir.1996). In *Moccio*, the plaintiff was terminated from his position in the New York State Office of Court Administration ("OCA") after a hearing that found him guilty of certain disciplinary infractions. Moccio challenged his dismissal through an Article 78 petition. Based on a finding that the decision to terminate Moccio was supported by substantial evidence, the state court dismissed his Article 78 petition and upheld his termination. *Moccio*, 95 F.3d at 197.

Moccio then filed a § 1983 action in federal court, alleging that the termination of his employment by the OCA violated his constitutional rights under the Fourteenth Amendment. Specifically, Moccio argued that the OCA violated Due Process by exercising its discretion to terminate him in an arbitrary and capricious manner, and violated Equal Protection by selectively sanctioning him for behavior for which other personnel were not punished. *Moccio*, 95 F.3d at 198.

■ The court explained that the *Rooker–Feldman* doctrine "is at least coextensive with the principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion)." *Moccio*, 95 F.3d at 199 (internal quotations omitted). Therefore, "a claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio*, 95 F.3d at 200. An Article 78 proceeding may have issue preclusive but not claim preclusive effects in a subsequent § 1983 action. *Szoke v. Carter*, 974 F.Supp. 360, 366 (S.D.N.Y.1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 870 n. 3 (2d Cir.1995); *Moccio*, 95 F.3d at 200; *Giakoumelos v. Coughlin*, 88 F.3d 56, 58 (2d Cir.1996)).

■ Collateral estoppel applies, under New York law, if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995). While the party seeking preclusion bears the burden of demonstrating that an issue in the current case was decided in a prior proceeding, the party

resisting preclusion must demonstrate that he was denied a full and fair opportunity to litigate the issue in the prior proceeding. *Colon,* 58 F.3d at 869.

The *Moccio* court noted that in his Article 78 proceeding, Moccio did not raise, although he could have, the precise claims that were the subject of his § 1983 action. Nonetheless, the court concluded that it lacked jurisdiction over Moccio's § 1983 action because issues central to both his equal protection and due process claims were decided adversely to him in the Article 78 proceeding.

Similarly, Jessen argues that this § 1983 case involves issues not addressed in the Article 78 proceeding, specifically, his allegations of unconstitutional retaliation. Although Jessen did not assert a claim precisely denominated as a First Amendment claim in the Article 78 proceeding, he did fully litigate his contention that the abolition of his position was not based on economic considerations and that the elimination of the position was done in bad faith. The State Court, accepting the defendants' evidence that the position was eliminated due to financial considerations, specifically found that Jessen had not demonstrated any "lack of good faith in the manner in which [the cost savings] was accomplished."

In determining whether the claims presented to the district court are inextricably intertwined with prior state court determinations, "the test is whether the federal district court would necessarily have to determine that the state court erred in order to find that the federal claims have merit." *Khal Charidim Kiryas Joel v. Village of Kiryas Joel,* 935 F.Supp. 450, 455 (S.D.N.Y. 1996) (citing *Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)) (other citations omitted). In this case, a finding that Jessen's position was in fact eliminated in retaliation for the First Amendment protected activities of Jessen or Doody would necessarily contradict—and in effect overrule—the State Court's judgement that the elimination of the position was based on economic considerations and was not undertaken in bad faith. The Town's actions could not be both retaliatory and in good faith. The first prong of the collateral estoppel test is thus met because an issue essential to plaintiff's First Amendment claim was decided adversely to him in the Article 78 proceeding.

The second prong of the collateral estoppel test is that the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Giakoumelos,* 88 F.3d at 59 (citing *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 73, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). Constitutional claims may, of course, be heard in an Article 78 proceeding. *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996) (citing *Christ the King Reg. High Sch. v. Culvert,* 815 F.2d 219, 224–225 (2d Cir.1987)). In this case, there is no evidence that Jessen was deprived of an opportunity to litigate fully the circumstances of the abolition of his position, an issue essential to his First Amendment claim.

### CONCLUSION

For the reasons stated, defendants' motion is granted. The Clerk of the Court is directed to dismiss the complaint.

**SO ORDERED.**