**James J. DOLAN, Plaintiff,**

v.

**Arthur ROTH, Commissioner; New York State Department of Taxation, et al., Defendant.**

**No. 103CV538.**

United States District Court, N.D. New York.

July 13, 2004.

*Introduction*

McCURN, Senior District Judge.

Plaintiff James Dolan is a self-described "outspoke[n] and vigorous activist in that Democratic party in the City of Hudson, located in Columbia County, State of New York." Complaint ("Co.") at 10, ¶ 26. In this action, brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that his First Amendment and Equal Protection rights were violated when defendants terminated him in retaliation for his Democratic party affiliation. This alleged retaliation occurred when plaintiff was terminated as an Investigator with the New York State Department of Taxation and Finance ("the Tax Department").[1] From defendants' standpoint, plaintiff's disqualification was not politically motivated. In fact, it was entirely proper because during the application process for an investigator position, he omitted relevant facts pertaining to a prior conviction, which occurred during his employment as Chief of Police for the Hudson City Police Department.

Defendants are now moving for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. They are also moving to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff cross moves for an order of discovery pursuant to Fed.R.Civ.P. 56(f).

*Background*

**I. Hudson City Police Department**

Plaintiff first began serving as Chief of Police of the Hudson City Police Department on October 3, 1986. Co. at 11, ¶ 27. During his service, plaintiff was the subject of two separate indictments. *Id.* at 14, ¶ 39 and 16, ¶ 45. Eventually he was convicted of four misdemeanors. *Id.* at 16,

Lewis B. Oliver, Jr., Esq., Albany, for Plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Albany, NY (Robert A. Siegfried, Asst. Attorney General, of Counsel), for defendants.

---

1. There are ten defendants, each of whom is being sued individually and in their official capacities. These defendants will be collectively referred to throughout as "the State."

¶ 47. Broadly stated, from plaintiffs' perspective the motivation for his indictment was because "[p]rominent Republicans in Columbia County, including the Sheriff and District Attorney, viewed [him] as a threat to the Republican Party's political control of Columbia County and the Sheriff's office in [that] County, which was source of patronage jobs for County Republicans." *Id.* at 14, ¶ 38. As a result of his convictions, "plaintiff was placed on probation, [and ordered to] pa[y] a fine, and [to] complete[ ] community service." *Id.* at 16, ¶ 47. However, later the sentencing judge found plaintiff guilty of violating his probation. Therefore, plaintiff was sentenced to 60 days imprisonment, continued probation and an increase in the number of community service hours to be performed. *See id.,* exh. A thereto at 2. Plaintiff's career with the Police Department was over.

## II. *State Investigator Position*

Once the dust had settled, "in 1996 plaintiff decided to apply for a position as an investigator with [the] State in order to make use of his background and experience in law enforcement." *Id.* at 17, ¶ 48. As part of the hiring process, plaintiff took three different civil service examinations, scoring 100% on two of the tests and 95% on the third. *Id.* at 17, ¶ 50. Despite those high test scores and his number one ranking "on all three statewide eligible lists[,]" on approximately August 7, 1996 one of the defendants, Joseph R. Healy, Director of Investigations for the State Civil Service Department ("Civil Service"), advised plaintiff that "he could not be appointed at that time[.]" *Id.* at 17, ¶ 51. The reason given by Healy was that plaintiff answered "yes" to certain questions regarding whether he had been discharged from employment "for reasons other than lack of work or funds, disability or medical condition; and whether he had ever been convicted of a crime." *Id.* at 17–18, ¶ 51.

Plaintiff thus was required to complete additional Civil Service forms to "evaluat[e] the circumstances of the affirmative answers" which plaintiff had given. *Id.* at 18, ¶ 52. As part of this further background check, plaintiff was required to provide Civil Service with a report from the Columbia County Department of Probation. *Id.* at 19, ¶¶ 55–56. Plaintiff made that request and Probation responded. *Id.* at 20–21, ¶ 57. "Civil Service, for unknown reasons, never received Probation's statement which it had sent to Civil Service pursuant to petitioner's request". Affirmation of Robert Siegfried (Aug. 28, 2003), exh. A thereto (Record on Appeal of Article 78 Proceeding) ("R."), at 7. On August 23, 1996, defendant Healy informed plaintiff that Civil Service had made " 'an informed determination' " and that plaintiff's " 'explanation' " was " 'found satisfactory' " and thus his name could " 'be certified' for appointment." Co. at 22, ¶ 59. Despite certification in 1996, plaintiff was not actually appointed to an Investigator position until several years later, on February 17, 2000. *Id.* at 22, ¶ 62. During the years between his dismissal as Police Chief and his State appointment, plaintiff continued to maintain a relatively high profile in local Democratic politics. *Id.* at 23, ¶¶ 65–71.

## III. *Civil Service*

Plaintiff's employment as a Tax Department Investigator was short-lived, however. He worked for approximately seven weeks. Soon after his appointment the "Hudson Register–Sun" ran an article about plaintiff stating, among other things, that his career with the police department ended "in controversy when he was prosecuted on a variety of criminal charges relating to this job as Hudson's police chief." Co., exh. B thereto. That article went on to note that plaintiff, a Democrat, had been appointed with a Republican gover-

nor in office. *Id.* at 24, ¶ 73, and exh. B thereto.

Following the publication of that article, purportedly "Republican Party officials" contacted defendant Hard, who at that time was the Tax Department's Deputy Commissioner. Co. at 24, ¶ 74. Supposedly she then contacted Tax Department officials regarding plaintiff's employment. *Id.* at 24–25, ¶ 74. An investigation ensued. After a several month investigation into the circumstances surrounding plaintiff's appointment, on September 19, 2000 Civil Service revoked plaintiff's appointment and he was terminated effective September 21, 200. *Id.* at 30–31, ¶ 89 and 33, ¶ 93. The stated reason for that termination was that plaintiff did not "disclose in his 1996 employment application certain facts regarding his violation of probation and subsequent resentencing on a prior criminal conviction." R. at 6.

## IV. Article 78 Proceeding

Plaintiff then appealed to the Civil Service Commission and shortly thereafter commenced an Article 78 proceeding in state court. Co. at 34, ¶¶ 94 and 95. During the Article 78 proceeding, relying upon section 50(4) of the Civil Service Law, the Supreme Court held that the "Civil Service's decision to revoke [plaintiff's] appointment, ..., was fully in accordance with the law." R. at 8. That statute reads in relevant part as follows: "[T]he state civil service department ... may investigate the qualifications and background of an eligible after has been appointed from the list, and upon finding facts which if known prior to appointment, would have warranted his disqualification, ... may revoke such eligible's certification and appointment and direct that his employment be terminated[.]" N.Y.Civ. Serv. L. § 50(4) (West Supp.2004). In the Supreme Court's opinion, plaintiff's "parole violation and subsequent re-sentencing were facts that, if known to ... Civil Ser-

vice in August 1996, would have justified a disqualification and refusal to certify [plaintiff] on the eligible list." *Id.* at 8. Thus, the state supreme court soundly concluded that "even if the petitioner's application could not be viewed as false or deceptive to the degree that it did not disclose his probation violation, Civil Service's decision to revoke petitioner's appointment, ..., was *fully in accordance with law.*" *Id.* (emphasis added).

On appeal the Third Department affirmed, also invoking Civil Service § 50(4), pointing out that Civil Service's decisions under that statute are "purely a matter of discretion[.]" *Dolan v. New York State Department of Civil Service,* 304 A.D.2d 1037, 1038, 759 N.Y.S.2d 221 (3rd Dep't 2003) (citation omitted). The Appellate Division agreed with Civil Service's rationale for disqualifying plaintiff, *i.e.* the integrity required of investigators in the Tax Department justified revoking plaintiff's position based "upon a finding of material omission of facts that otherwise would have precluded [plaintiff] from qualification[.]" *Id.* at 1039, 759 N.Y.S.2d 221. Then, given the "wide discretion" which Civil Service is afforded "[i]n determining the fitness of candidates for civil service employment," the court accurately noted that its review was "limited to ... whether the agency action was arbitrary or capricious[.]" *Id.* (citation omitted). Given that "limited" standard of review, the Third Department held that plaintiff's "failure to mention his probation violation in the application supplement provided a rational basis for the conclusion that such omission was deceptive and intentional, thereby justifying revocation of [plaintiff's] appointment." *Id.*

In that appeal plaintiff also raised the issue of Supreme Court's denial of his request for discovery. The Appellate Division held that the Supreme Court properly

denied same because " 'judicial review of an administrative determination is limited to the record before the agency and proof outside the administrative record should not be considered[.]' " *Id.* (internal quotation marks and citation omitted). The court concluded by stating that it has "considered petitioner's additional contentions, including his assertion that he was denied due process, and [it] f[ound] them equally unpersuasive." *Id.* On May 29, 2003 plaintiff sought permission to appeal the Appellate Division's decision to the New York Court of Appeals. Siegfried Aff., exh. E thereto. For whatever reason, that appeal did not go forward.

On April 30, 2003 plaintiff commenced this section 1983 civil rights action wherein he alleges two causes of action: (1) that he was terminated as a Tax Department investigator in retaliation for exercising his First Amendment rights, and (2) that that termination violated his Equal Protection rights.

### *Discussion*

### *I. Scope of Review*

"When (as here) a jurisdictional challenge under Fed.R.Civ.P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States,* 319 F.3d 550, 554 (2d Cir.2003) (citations omitted). The same standard applies to a Rule 12(b)(6) motion. *See Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). In setting forth their respective version of the facts, the parties have cited to documents beyond the complaint however. For example, they heavily rely upon the record on appeal in plaintiff's prior Article 78 proceeding. Thus it is necessary to determine to what extent a court may consider matters outside the complaint here.

Even though Rule 12(b) motions are "testing the adequacy of the complaint," *see United States v. City of New York,* 359 F.3d 83, 88 (2d Cir.2004) (citation omitted), in deciding such motions courts also may "review documents extraneous to the complaint[.]" *Salichs v. Tortorelli,* No. 01 Civ. 7288, 2004 WL 602784, at *2 (S.D.N.Y. March 29, 2004) (citing *Chambers v. Time Warner,* 282 F.3d 147 (2d Cir.2002)). Courts may look to such documents when they are " 'integral' " to the complaint because the complaint "relies heavily upon [the] terms and effect [of those documents.]" *Pollock v. Ridge,* 310 F.Supp.2d 519, 524 (W.D.N.Y.2004) (internal quotation marks and citations omitted) (KC). A court may also take into account "any documents attached to the complaint or incorporated by reference[,]" *Rombach v. Chang,* 355 F.3d 164, 169 (2d Cir.2004) (citation omitted), as well as " 'matters of which judicial notice may be taken.' " *United States Fidelity & Guaranty Company and American Home Assurance v. Petroleo Brasileiro S.A.,* No. 98 CIV 3099, 2001 WL 300735, at *2 (S.D.N.Y. March 27, 2001) (quoting *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999)) (other citation omitted). As to the latter, a court is "permitted to take judicial notice of court documents from previous actions." *Washington v. United States Tennis Association, Inc.,* 290 F.Supp.2d 323, 326 (E.D.N.Y.2003) (citing, *inter alia, Marchon Eyewear, Inc. v. Tura L.P.,* No. 98 CV 1932(SJ), 1999 WL 184107, at *2 (E.D.N.Y. March 28, 1999) (relying on pleadings and judgments in a prior action in granting a motion to dismiss on preclusion grounds)); *see also Titan Sports, Inc. v. Hellwig,* No. 3:98–CV–467, 1999 WL 301695, at *6 (D.Conn. April 26, 1999) (citations omitted) (court "may take judicial notice of any decisions and filings in related litigation between the parties[ ]").

■ In accordance with those principles, in addition to the complaint, the court will consider the two documents attached thereto, *i.e.* an August 12, 1996 letter from the Columbia County Probation Department to the New York State Department of Civil Service regarding plaintiff Dolan and a copy of a February 23, 2000 article from "The Hudson Register Star" regarding plaintiff's appointment as a Tax Department Investigator. It will also take judicial notice of the record of the Article 78 proceeding and the decisions arising therefrom.[2] To the extent that the parties are relying upon exhibits, affirmations or other extraneous materials which do not meet the criteria set forth above, the court is disregarding same. *See Petroleo Brasileiro S.A.*, 2001 WL 300735, at *2 n. 4.

## II. Plaintiff's Cross–Motion for Discovery

In opposing the State's Rule 12 motion to dismiss, plaintiff is relying upon subsection (f) of Fed.R.Civ.P. 56, which governs summary judgment motions. This Rule, entitled "When Affidavits are Unavailable" and expressly provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). On the basis of this Rule, plaintiff seeks denial of the State's dismissal motion and a "postpon[ement]" or a "continu[ance]" of the State's motion,

to give plaintiff an "opportunity to initiate and complete full discovery[.]" Notice of Cross–Motion at 3, ¶ (a).

The State responds that this cross-motion for discovery should be denied because in the state court proceedings plaintiff did have "a full and fair opportunity to litigate" the claims which he is pursuing herein. In making this argument, the State points out that plaintiff's current discovery demands are the same as those which were made and rejected in the state court.

This argument is non-responsive to plaintiff's cross-motion. At least as plaintiff has framed it, the issue is a very narrow one—whether or not he is entitled to discovery under Rule 56(f). The issue of whether he had a fair and full opportunity to litigate the claims which are the subject of this lawsuit is, in the context of the present motions, a distinct issue which will be addressed *vis-a-vis* the State's motion to dismiss.

■ Nonetheless, for several reasons plaintiff's reliance upon Rule 56(f) is completely misplaced. First of all, obviously that Rule in and of itself does not provide a basis for denying the State's Rule 12 motion. Even assuming *arguendo* that the State was moving for summary judgment under Rule 56, subsection (f) still would not provide a basis for dismissal because it allows for discovery in appropriate circumstances—not outright dismissal. Second, because the State's motion "is one for dismissal, not summary judgment . . ., a Rule 56(f) continuance is inapplicable." *See Thomas v. Nakatani*, 128 F.Supp.2d 684, 694 (D.Hawai'i 2000), *aff'd on other grounds*, 309 F.3d 1203 (9th Cir.2002).

---

**2.** Fed.R.Evid. 201(a) and (c) grant courts the discretion to take judicial notice of adjudicative facts. What is more, because both plaintiff and the State are relying upon the Article 78 record, this is not a situation where the court should decline to consider materials extraneous to the complaint due to lack of notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002).

Accordingly, the court denies plaintiff's cross-motion to dismiss and its cross-motion for discovery brought pursuant to Fed.R.Civ.P. 56(f).

### III. State's Rule 12(b)(1) and 12(b)(6) Motions

#### A. Due Process

■ Plaintiff's purported due process claim need not detain the court for long. As the State reads the complaint, plaintiff is alleging a denial of due process as he did in the Article 78 proceeding. This is a plausible reading of the complaint. For instance plaintiff alleges that he did not receive prior notice of the affidavit submitted at the January 30, 2001 Civil Service meeting. Therefore, plaintiff alleges that he had no opportunity to review or respond thereto, and no opportunity to cross-examine. Co. at 36, ¶ 102 In a similar vein, plaintiff alleges that that meeting was "not a 'hearing' because no witnesses were sworn and no testimony was taken, but only oral arguments were presented." *Id.* at 35, ¶ 98. These are representative of several allegations in the complaint which, if proven, could establish a due process violation.

■ Despite the foregoing, in opposing the State's motion plaintiff explicitly states: "In the first place, [his] complaint does *not* specifically allege a due process cause of action." Plaintiff's Memorandum of Law in Opposition to Defendants' Second Motion to Dismiss and in Support of Cross–Motion for Discovery ("Pl.Opp'n") at 15 (emphasis added). The court will not ignore that unequivocal declaration. After all, under the well pleaded complaint rule "a plaintiff is master of the claim.'" *Virgilio v. Motorola, Inc.,* 307 F.Supp.2d 504, 512 (S.D.N.Y.2004) (quoting *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Accordingly, the court is "bound to accept [p]laintiff['s] characterization of [his] own claims." *Id.*

Adopting plaintiff Dolan's characterization of his claims means that he is *not* asserting a due process violation. Consequently, there is no need to address the State's argument that the *Rooker–Feldman* doctrine bars these purported due process claims.

As will soon become evident, resolution of plaintiff's First Amendment retaliation and equal protection claims is not so straightforward.

#### B. Rule 12 Legal Standards

■ As mentioned at the outset, in moving to dismiss the State is relying upon Rule 12(b)(6) and Rule 12(b)(1). Fairly recently this court set forth the dismissal standards under these two Rules. *See Canadian St. Regis Band of Mohawk Indians v. N.Y.,* 278 F.Supp.2d 313, 357–58 (N.D.N.Y.2003). There is need to reinvent the wheel, thus the court is taking the liberty of liberally quoting from *St. Regis:*

[A] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is concerned, . . . will be denied unless the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous. . . . If the claim is neither immaterial nor insubstantial, we assume or find sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits . . . .

In a similar vein, under Rule 12(b)(6), [t]he complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. . . . The issue is whether the plaintiffs, . . ., are entitled to offer evidence to support their claim, not whether they ultimately will prevail.

*Id.* at 357–58 (internal quotation marks and citations omitted). "The standards governing dismissal under Rule 12(b)(1) and 12(b)(6) are ... quite 'generous.'" *Id.* at 357 (quoting *Hamilton Ch. of Alpha Delta Phi v. Hamilton College,* 128 F.3d 59, 63 (2d Cir.1997)). By the same token, however, as will soon become evident, the primary issue here is subject matter jurisdiction. On that issue the plaintiff "must prove the existence of [same] by a *preponderance of the evidence.*" *Moser v. Pollin,* 294 F.3d 335, 339 (2d Cir.2002) (citation omitted) (emphasis added). Keeping the foregoing principles firmly in mind, the court will turn to the parties' substantive arguments.

### 1. *Rooker–Feldman Doctrine*

The primary focus of the State's motion is that this action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) based upon the doctrine of collateral estoppel. The State goes on to briefly argue that as an additional reason for dismissing this action, this court lacks subject matter jurisdiction based upon the *Rooker–Feldman* doctrine. To be sure, "the precise demarcations of the *Rooker–Feldman* doctrine ... and the preclusive effect of common law ... collateral estoppel on the other, remain obscure." *Harris v. New York State Department of Health,* 202 F.Supp.2d 143, 158 (S.D.N.Y.2002). "[Y]et[,] the doctrines differ in fundamental ways that may materially affect how a case may be decided." *Id.* at 159 (citing Wright, Miller & Copper, § 4469.1, at 664).

■ There is a fundamental distinction between the *Rooker–Feldman* doctrine and collateral estoppel. "[T]he *Rooker–Feldman* doctrine addresses the *subject matter jurisdiction* of federal courts[,]" *id.* at 159 (emphasis added), whereas "[c]ollateral estoppel protects parties from multiple lawsuits and the possibility of inconsistent decisions, and it conserves judicial resources." *Lytle v. Household Manufac-*

*turing, Inc.,* 494 U.S. 545, 553, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990 (citation omitted). "By casting the [*Rooker–Feldman*] doctrine as one barring federal court jurisdiction, the Supreme Court necessarily underscored the substantive and procedural distinctions between [that doctrine] and the preclusion effects of *res judicata* and collateral estoppel." *Harris,* 202 F.Supp.2d at 160. Obviously, without subject matter jurisdiction, a court does not have the authority to consider the merits of a case. *Id.* (citing cases). Thus, although the State did not address the issue of subject matter jurisdiction first, this court is bound to do so. *See Tsabbar v. Booth,* 293 F.Supp.2d 328, 334 n. 4 (S.D.N.Y.2003) (citation omitted) (finding that the *Rooker–Feldman* doctrine divested the court of subject matter jurisdiction, court declared that it "need not rule upon the applicability of *res judicata* and collateral estoppel[ ]")); *Clinch v. Spence,* 207 F.Supp.2d 262, 266 (S.D.N.Y.2002) (citations omitted) (given defendants' lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, court was "required to resolve [that] challenge to [its] subject matter jurisdiction prior to considering any other question[ ]"); *Birmingham v. Ogden,* 70 F.Supp.2d 353, 358 (S.D.N.Y.1999) (citations omitted) (court reasoned that because it was "required" to resolve the issue of subject matter jurisdiction "prior to considering any other question[,]" it must begin its analysis by addressing defendants' *Rooker–Feldman* argument).

■ "First announced in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362, ... (1923), and later affirmed in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206, ... (1983), the *Rooker–Feldman* doctrine holds that, among federal courts, only the Supreme

Court has subject matter jurisdiction to review state court judgments." *Breedlove v. Cabou*, 296 F.Supp.2d 253, 267 (N.D.N.Y.2003) (citations omitted). In other words, "[t]he essence of the *Rooker–Feldman* doctrine is that inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgment of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Santini v. Connecticut Hazardous Waste Management Service*, 342 F.3d 118, 126 (2d Cir.2003) (internal quotation marks and citation omitted). As the Second Circuit has explained on more than one occasion:

> *Rooker–Feldman* bars those claims that were adjudicated in a prior state court action, as well as those claims that are *'inextricably intertwined'* with the state court judgment. [The Second Circuit has] held that "*'inextricably intertwined* means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ...*, subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.'"

*Id.* at 126 (quoting *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198–200 (2d Cir.1996)) (emphasis added).

"Courts have identified several factors to guide application of the *Rooker–Feldman* 'inextricably intertwined' standard." *Clinch*, 207 F.Supp.2d at 267. "These include, but are not limited to: whether the case brought in federal court by the party unsuccessful in state court amounts merely to a recasting of losing claims under a semblance of federal ... causes of action not decided or interposed in the prior state court proceeding, so that in essence, the district court is being called upon to undertake appellate review of the state court decision ... [,] or ... whether the invocation of the federal court's jurisdiction ef-

fectively seeks a direct review of a state court judgment[.]" *Id.* (internal quotation marks and citations omitted).

■ "[W]hether an issue is 'inextricably intertwined' with a claim raised in state proceedings is easy to identify at the outer limits." *Hason v. Office of Professional Medical Conduct*, No. 02 CIV. 10007, 2004 WL 876931, at *5 (S.D.N.Y. April 19, 2004) (citing *Moccio*, 95 F.3d at 198–99). On the one hand, "'[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action.'" *Id.* (quoting *Moccio*, 95 F.3d at 198–99). "In contrast, if an issue 'was never presented in the state court proceedings and the plaintiff did not have an opportunity to present [it] in those proceedings, [it is] not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman*." *Id.* (quoting *Moccio*, 95 F.3d at 199).

■ As will soon become apparent, whether plaintiff Dolan's First Amendment retaliation and Equal Protection claims are "inextricably intertwined" with his Article 78 claims does *not* fit neatly into either of those two categories. Therefore, "[t]o determine the status of an issue [such as this] falling between those two boundaries, th[e] *[c]ourt can seek guidance* from the *principle of collateral estoppel* under state law—New York law for this action." *Id.* (emphasis added) (citing *DiBlasio v. Novello*, 344 F.3d 292, 296 (2d Cir.2003)); *see also Clinch*, 207 F.Supp.2d at 267 ("inextricably intertwined has been interpreted to be co-extensive with the law of preclusion") (citation omitted). Given the overlap between the *Rooker–Feldman* and collateral estoppel doctrines, "'a claim will be barred under the [former] doctrine if it would be barred under the principles of preclusion.'" *Marden*, 22 F.Supp.2d at 185 (quoting *Moccio*, 95 F.3d at 200).

In New York, two criteria must be met before collateral estoppel will apply: "[A] claim asserted...is precluded pursuant to the *Rooker–Feldman* doctrine only if (1)[it] was actually and necessarily decided...and (2) [plaintiff] had a full and fair opportunity to litigate...[that] issue in [his Article 78] proceeding." *Hason*, 314 F.Supp.2d at 246–47 (internal quotation marks and citations omitted). Before examining the just identified elements *vis-a-vis* the facts of the present case, a brief outline of how courts have interpreted these two elements is in order.

### a. Actually and Necessarily Decided

As to the actually and necessarily decided element, "it is not necessary that the issue have been 'actually litigated' in the sense that evidence have been offered on the point." *Richardson v. City of New York*, No. 97 Civ. 7676, 2004 WL 325631, at *2 (S.D.N.Y. Feb.20, 2004). "New York requires only that the issue have been properly raised by the pleadings *or otherwise placed in issue and actually determined* in the prior proceeding." *Id.* (internal quotation marks and citation omitted) (emphasis added). In making this assessment, the "focus[ ][is] on the rights, questions or facts that underlie a judicial decision; it does not focus on the legal theories underlying the complaint or decision." *Beharry v. M.T.A. New York City Transit Authority*, No. 96–CV–1203, 1999 WL 151671, at *6 (E.D.N.Y. March 17, 1999).[3] "Therefore, subject to certain caveats not relevant here, once a certain set of facts has been determined in a proceeding, those facts cannot be challenged even when a subsequent proceeding attempts to apply a new legal theory to those facts." *Id.* (citing *Moccio*, 95 F.3d at 201); *see also Bracey v. Safir*, No. 98 Civ. 6565 SAS, 1999 WL 672564, at *4 (S.D.N.Y.1999) ("Courts in this Circuit

have applied the *Rooker–Feldman* bar only where the factual underpinnings of a plaintiff's subsequent constitutional claim were adversely decided in a previous state proceeding.") Thus, "[f]or collateral estoppel purposes, issues are considered identical if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first." *Richards v. City of New York*, No. 97 Civ. 7990, 2003 WL 21036365, at *8 (S.D.N.Y.2003) (internal quotation marks and citations omitted).

Significantly, "[u]nder Second Circuit precedent, the *Rooker–Feldman* principle may *bar assertion in federal court* not only of *issues and claims* actually presented in state court but, under certain circumstances, of *those that could have been raised.*" *Harris*, 202 F.Supp.2d at 169 (citation omitted) (emphasis added). This is so *"even if the claim in which the issue arises in the subsequent action* was not brought and *could not have been brought in the previous action* whose judgment gives rise to the estoppel." *Santini*, 342 F.3d at 127 (citations omitted) (emphasis added). As the party seeking preclusion, the State "bears the burden of demonstrating that an issue...was decided in a prior proceeding[.]" *Jessen v. Cavanaugh*, 9 F.Supp.2d 393, 396 (S.D.N.Y. 1998) (citation omitted).

### b. Full and Fair Opportunity to Litigate

A variety of factors are relevant to the issue of whether a plaintiff has had a "full and fair opportunity" to litigate a claim in a prior state court proceeding. As the Second Circuit explained in *Moccio*, "[u]nder New York law, the determination of whether there was a full and fair opportunity to litigate requires that we consider,

---

**3.** Def. Appendix 2.

among other things, the size of the claim in the prior proceeding, the forum of the prior proceeding, the extent of the prior litigation, and the availability of evidence now that was not available at the time of the prior proceeding." 95 F.3d at 202 (citation omitted). Collateral estoppel or "[i]ssue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing on his or her claim.'" *Palmer v. Goss*, No. 02 Civ. 5804, 2003 WL 22519446, at *3 (S.D.N.Y. Nov.5, 2003) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995)) (other citation omitted). Plaintiff Dolan, as "the party resisting preclusion must demonstrate that he was denied a full and fair opportunity to litigate the issue in the prior [Article 78] proceeding." *See id.* at 397 (citation omitted).

■ As mentioned at the outset, the plaintiff is alleging (1) that the State engaged in "unlawful discrimination and retaliation against [him] because of [his] protected speech and/or expressive conduct on matters of public concern, in violation of the First Amendment of the United States Constitution[;]" and (2) that by disqualifying him for an investigator position, defendants violated his Equal Protection rights under the Fourteenth Amendment. Co. at 22, ¶ 61; and at 55, ¶¶ 132 and 136. Plaintiff is relying upon 42 U.S.C. § 1983 as the statutory basis for these claims. *See id.* By way of illustration, plaintiff alleges that his equal protection rights "under...42 U.S.C.1983" were violated. *Id.* at 55, ¶¶ 132 and 136. Section 1983 does not provide any substantive rights though; it is simply a vehicle "by which aggrieved persons may allege violations of their federal or constitutional rights." *Walton v. Safir*, 122 F.Supp.2d 466, 476 n. 10 (S.D.N.Y.2000) (citation omitted). Thus, to the extent plaintiff attempts to rely upon section 1983 as a basis for any substantive rights, such reliance is misplaced and the court will disregard same. The court will address plaintiff's constitutional claims *seriatim.*

### I. First Amendment Retaliation

■ The State argues collateral estoppel bars plaintiff's First Amendment retaliation cause of action "because [plaintiff] Dolan *specifically* raised the issue of political discrimination in his Article 78 proceeding and the State court reviewed this issue when it decided against plaintiff's bad faith termination claim." St. Memo. at 13 (emphasis added) (citations omitted). Plaintiff counters that the issues raised in the Article 78 proceeding "differ entirely" from those which he is raising in this section 1983 action. *See* Pl. Memo. at 3. In plaintiff's opinion, the only issue which he "raised" in the Article 78 proceeding "was whether [his] dismissal was an arbitrary and capricious abuse of discretion effected by an error of law in excess of the [Civil Service] Commission's jurisdiction under Civil Service Law 50(4), a New York statute that allows retroactive disqualification of civil service employees under certain circumstances." *Id.* at 2–3 (citations omitted). Thus, plaintiff reasons, his First Amendment retaliation claim was not "actually and necessarily decided" in the prior state court litigation.

The parties did not specifically address whether the issue of plaintiff's retaliation claim was properly raised by the pleadings or otherwise placed in issue. However, because that is a component of the first collateral estoppel element, the court will address this issue and in so doing will examine the extensive record before it. When that is done, the court is satisfied that the retaliation issue meets the criteria of having been properly raised in the Article 78 proceeding.

In his Article 78 proceeding Dolan also alleged that the State's "purported concern

with the violation of probation is *pre-textual,* arbitrary and capricious and an abuse of discretion." *Id.* at 35, ¶182 (emphasis added). For example, in a verified Petition to Civil Service plaintiff's counsel at the time wrote:

> What has happened is that Mr. Dolan's *political enemies* discovered his appointment and from the *retribution-infested political waters* of Columbia County comes this charge made through unnamed and unidentified 'Tax Department officials.'

*Id.* at 66 (emphasis added). That petition further stated:

> Mr. Dolan has demonstrated his merit and fitness for this Grade 13 [investigator] position. It would truly be a sad day if the *political bacteria* that has infected Columbia County were allowed to spread to the New York State Department of Civil Service to cause the Department to take the action the unnamed Tax Department officials seek.

*Id.* at 69 (emphasis added). Then, petitioner explicitly "suggest[ed] that the *proper investigation lies* not with Mr. Dolan's disclosures but rather *in determining whether violations of* Sections 106 and 107 of the Civil Service Law and *Mr. Dolan's* State and *Federal constitutional rights occurred* "[.] *Id.* at 69 (emphasis added). Certainly this can be read as asserting a First Amendment retaliation claim, especially when read together with the administrative record.

Furthermore, consistent with the foregoing, in his supreme court memorandum of law Dolan specifically took the position that "[a] probationer *cannot be terminated for reasons* that are *prohibited* in the law or *by the Constitution* . . . , which *includes because of one's politics* . . . , or because of a prior conviction[.]" *Id.* at 62 (emphasis added) (citations omitted). Likewise, in his notice seeking permission to appeal to the Court of Appeals, plaintiff declared that "[t]he dark cloud of *political retaliation* hangs over [his] termination." Affirmation of Robert A. Siegfried (Aug. 28, 2003), exh. E thereto at 26 (emphasis added). Thus, despite plaintiff's assertion that his retaliation claim was "not even presented to the state courts[,]" Pl. Memo. at 8–9, undoubtedly it was. As the foregoing demonstrates, that claim was raised by the pleadings or otherwise placed in issue during the Article 78 proceeding.

Plaintiff's First Amendment retaliation claim also was "actually decided" as that phrase is used in the parlance of collateral estoppel analysis. In arguing that plaintiff's First Amendment retaliation claim was actually and necessarily decided, the State heavily relies upon *Jessen, supra.* In *Jessen,* after plaintiff's termination as a park superintendent, he brought an Article 78 proceeding alleging that "the Town had acted in bad faith and without any legitimate economic motivation in abolishing his position, in violation of . . . the New York State Constitution." 9 F.Supp.2d at 369. The state court found to the contrary: Plaintiff's "position was eliminated due to financial considerations[.]" *Id.* at 397. Furthermore, the state court "specifically found that Jessen had not demonstrated any lack of good faith in the manner in which [the cost savings] was accomplished." *Id.* (internal quotation marks omitted). Thus the court concluded that the "defendants' actions were substantively valid and procedurally proper." *Id.*

In his subsequent section 1983 action, plaintiff Jessen alleged "that his First Amendment rights of freedom of association and free speech were violated because his position was eliminated in retaliation . . . against [plaintiff] for his association" with a perceived political rival of the Town. *Id.* at 395. The court held that it lacked subject matter jurisdiction under the *Rooker–Feldman*

doctrine. It reasoned that although "Jessen did not assert a claim precisely denominated as a First Amendment claim in the Article 78 proceeding, he did fully litigate his contention that the abolition of his position was not based on economic considerations and that the elimination of the position was done in bad faith." *Id.* at 397. In finding that plaintiff Jessen fully litigated his retaliation claim, the court further reasoned that "[t]he State Court, accepting the defendants' evidence that the position was eliminated due to financial considerations, specifically found that Jessen had not demonstrated any 'lack of good faith in the manner in which [the costs savings] was accomplished.'" *Id.*

The court went on to invoke the *Rooker–Feldman* "inextricably intertwined standard" explaining that the test thereunder "'is whether the federal district court would necessarily have to determine that the state court erred in order to find that the federal claims have merit.'" *Id.* (quoting *Khal Charidim Kiryas Joel v. Village of Kiryas Joel*, 935 F.Supp. 450, 455 (S.D.N.Y.1996) (other citation omitted)). Applying that test, the *Jessen* court reasoned that if it were to find that "Jessen's position was in fact eliminated in retaliation for [his] First Amendment protected activities [such finding] would necessarily contradict—and in effect overrule—the State Court's judgment that the elimination of the position was based on economic considerations and was not undertaken in bad faith." *Id.* Thus because the court found that "[t]he Town's action could not be both retaliatory and in good faith[,]" it found that the first prong of the collateral estoppel test had been met "because an issue essential to plaintiff's First Amendment claim was decided adversely to him in the Article 78 proceeding." *Id.*

The *Jessen* court is not alone in its reasoning. For example, in *Vargas v. City of New York*, No. 01 Civ. 7093, 2003 WL 660820 (S.D.N.Y. Feb.28, 2003), after a Civilian Review Board found plaintiff "guilty of using excessive force while effectuating [an] arrest[,]" he was terminated. *Id.* at *1 (citations omitted). Following his termination, plaintiff commenced an article 78 proceeding alleging "that the Board's decision was arbitrary, capricious, an abuse of discretion, contrary to the weight of the evidence adduced at the disciplinary hearing and excessive punishment[,]" as well as amounting to a denial of due process. *Id.* at *5 (internal quotation marks and citation omitted). Upon transfer to the Appellate Division that court "dismissed plaintiff's case holding that the . . . determination that plaintiff used excessive force in making the arrest was 'supported by substantial evidence' and that the penalty of dismissal does not shock our conscience in view of the evidence[.]" *Id.* (citing *Vargas v. Safir*, 278 A.D.2d 54 (1st Dep't 2000)).

Plaintiff Vargas then commenced a civil rights action in federal court alleging that he was terminated based upon his race in violation of his Equal Protection and Due Process rights. Ultimately the *Vargas* court held that based upon the *Rooker–Feldman* doctrine, it was without subject matter jurisdiction to consider those claims. *See id.* at *6. In so holding, the court rejected plaintiff's contention "that he did not have an opportunity to argue discrimination and disparate treatment claims in the prior proceedings." *Id.* at *4. Plaintiff had such an opportunity reasoned the *Vargas* court because "an Article 78 proceeding is an appropriate forum to raise [such] issues[.]" *Id.* at *5 (citations omitted). The court stressed that "[a]lthough plaintiff did *not* raise his constitutional claims in his Article 78 proceeding, *it cannot be doubted that he could*

*have raised these issues* in that proceeding." *Id.* (citing *Moccio,* 95 F.3d at 199) (emphasis added).

Ultimately the *Vargas* court found that plaintiff's constitution based claims were "inextricably intertwined" with his Article 78 claims for *Rooker–Feldman* purposes. Framing the issue before it as "whether [plaintiff's] termination was terminated because of his race[,]" the district court held that "the Appellate Division's finding that the termination decision was *not arbitrary and capricious* but was based on substantial evidence *necessarily subsumes* the *question* of *whether* it was made with *discriminatory intent.*" *Id.* at *6 (emphasis added). Thus, based upon the *Rooker– Feldman* doctrine, it was without jurisdiction to hear plaintiff's federal action.

As in the *Jessen* line of cases, the issue of whether the State's decision to terminate plaintiff Dolan was arbitrary and capricious was placed in issue and actually determined in the Article 78 proceeding. Indeed, the petition itself is replete with assertions that numerous acts of the Commission were arbitrary and capricious. *See, e.g.,* R. at 35, ¶ 119; at 36, ¶ 122. Petitioner Dolan also asserted a bad faith claim in his Article 78 petition, averring that the State's "conduct in discharging [plaintiff]...constitutes bad faith and is arbitrary, capricious and an abuse of discretion." *Id.* at 38, ¶ 195; *see also id.* at 23, ¶ 105 (State's "termination...was accomplished in bad faith[ ]"). Recognizing its "limited review of whether the [Civil Service] action was arbitrary or capricious[,]" the Appellate Division decided that issue when it held that Civil Service was justified in revoking plaintiff's appointment because there was a rational basis for so doing. *Dolan,* 304 A.D.2d at 1039, 759 N.Y.S.2d 221.

Based upon the *Jessen* and *Vargas* rationale, the Appellate Division's finding that the State had a "rational basis" un-

der section 50(4) of the Civil Service law for disqualifying plaintiff as a Tax Department investigator subsumes the question of whether that disqualification was made with an impermissible motive. *See also Crosland v. City of New York,* 140 F.Supp.2d 300, 310 (S.D.N.Y.2001) (citing cases), *aff'd without pub'd decision,* 54 Fed.Appx. 504 (2d Cir.2002) (internal quotation marks and citations omitted) (where "state court concluded that the Medical Board's decision to rejects [plaintiff's] application for accidental disability retirement was both rational and based on credible medical evidence[,]...finding by [federal district] Court that [plaintiff] was denied [such] retirement in retaliation for his protected speech would necessarily contradict the state court's determination[ ]"); *Richardson v. City of New York,* No. 97 Civ. 7676, 2004 WL 325631, at *1 (S.D.N.Y. Feb.20, 2004) (quoting *Latino Officers Ass'n v. City of New York,* 253 F.Supp.2d 771, 787 (S.D.N.Y.2003)) ("[Wh]ere an Article 78 petitioner seeks annulment of a disciplinary decision on the ground that it was discriminatory or retaliatory, a determination by the state courts that the decision was supported by substantial evidence 'necessarily implie[s] rejection of [the] claim that [the] termination was discriminatory and retaliatory' and thus forecloses a similar contention in a subsequent federal action.") Furthermore, plaintiff's First Amendment retaliation claims and his Article 78 claims are "inextricably intertwined" under the *Rooker–Feldman* doctrine. That is so because if this court were to decide now that plaintiff's retaliation claim had merit, then it also would necessarily be holding that the State court erred. That is precisely the situation which the Supreme Court sought to avoid under *Rooker–Feldman.*

There is an additional reason for finding that Dolan's retaliation claim was necessarily decided in the Article 78 proceeding.

That is because both the Supreme Court and the Appellate Division expressly found his other claims to be without merit. The Supreme Court stated that it "ha[d] reviewed the petitioner's remaining contentions and conclude[d] that they [we]re without merit." R. at 9. In nearly identical language, the Third Department stated that it had "considered petitioner's additional contentions, including his assertion that he was denied due process, and f[oun]d them equally unpersuasive." *Dolan*, 304 A.D.2d at 1039, 759 N.Y.S.2d 221 (Dept.App.1). Thus, as in *Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999), "[a]lthough the Appellate Division in the prior proceeding primarily addressed the claim that the determination to discharge plaintiff was not supported by substantial evidence, the court followed it statutory duty to dispose of all issues in the proceeding when it held that all of plaintiff's remaining contentions [we]re without merit[.]" *Id.* (internal quotation marks and citations omitted). Therefore, the fact that the state courts found plaintiff's remaining claims to be without merit satisfies collateral estoppel's actually decided standard. Plaintiff urges the court to follow the Second Circuit's decision in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) and reach a contrary result, *i.e.* that his First Amendment retaliation claim was *not* actually litigated and necessarily decided. *Colon* is readily distinguishable from the present case however. There, in his Article 78 proceeding Colon "did not mention [his prior lawsuits,] let alone suggest that the disciplinary proceedings against him were a response to those lawsuits." *Id.* at 870. In finding that Colon was not collaterally estopped from asserting a retaliation claim in a subsequent § 1983 action, the Court also relied upon the "very narrow issue" which he asserted in his Article 78 petition. *Id.* at 871. Not only was that petition couched in narrow terms,

"in his brief to the Appellate Division, Colon took care to make clear that he was not challenging the hearing officer's decision was contrary to the evidence." *Id.*

The same is *not* true here. As set forth above, plaintiff Dolan's Article 78 petition was far more broadly framed than was Colon's petition. Moreover in sharp contrast to *Colon*, for the reasons previously discussed, plaintiff Dolan's retaliation claim was before the Supreme Court and the Appellate Division. Thus, *Colon* does *not* support Dolan's position.

In arguing that his retaliation claim was not actually decided in the Article 78 proceeding, plaintiff further asserts that defendants' "motivation...was not even mentioned" therein. Pl. Memo. at 9. This is inaccurate. The record contains at least two specific references to defendants' claimed motivation. Indeed, in this Appellate brief Dolan unequivocally stated, "[t]here is ample evidence that the termination of petitioner was improperly motivated by bad faith considerations[.]" Siegfried Aff'm, exh. D thereto at 62. Similarly, Dolan claimed that it is "telling as to [defendants'] motivation[ ]" that there was an investigation into plaintiff's background only "after an unidentified person read a news article concerning the fact that [he] was a political adversary of his employer[.]" *Id.* Thus to the extent plaintiff is claiming that his retaliation claim was not "actually decided" [for collateral estoppel purposes] in the Article 78 proceeding, this argument is misplaced.

All of these reasons convince the court that the State has met its burden of showing that the First Amendment retaliation issue was "raised by the pleadings or otherwise placed in issue and actually determined in the prior [Article 78] proceeding." *See Richardson*, 2004 WL 325631, at *2 (internal quotation marks and citation omitted).

 As to the second collateral estoppel prong, the State maintains that plaintiff had a full and fair opportunity to argue his First Amendment claim "because he had ample opportunity to submit petitions, affidavits, and other forms of written proof as well as the ability to obtain discovery and a trial[,]" regardless of the state court's denial of plaintiff's discovery request. St. Memo. at 17–18. Even though he had the burden of proving this aspect of collateral estoppel, plaintiff has offered nothing to refute this assertion by the State. Plaintiff's failure to meet his burden of proof, combined with the fact that the State did meet its burden, easily supports the conclusion that *Rooker–Feldman* precludes a finding of subject matter jurisdiction by this court.

This conclusion is bolstered by several factors. First of all, as noted earlier, clearly an Article 78 proceeding *is* a proper forum in which to raise constitutional issues. *Vargas,* 2003 WL 660820, at *5 (citing *Moccio,* 95 F.3d at 199); *see also Jessen,* 9 F.Supp.2d at 397 (citation omitted) (finding that plaintiff did have a full and fair opportunity to litigate his First Amendment retaliation claim in the prior Article 78 proceeding where he could raise that constitutional claim in such proceeding and there was "no evidence that [he] was deprived of an opportunity to litigate fully the circumstances of the abolition of his position"); *see also Marden,* 22 F.Supp.2d at 185 ("Although Marden did not assert a claim precisely denominated as a First Amendment retaliation claim in the Article 78 proceeding, he did have the opportunity fully to litigate his contention that his dismissal was retaliatory, and hence unconstitutional, because of his involvement in protected political conduct.") And certainly plaintiff Dolan could have availed himself of that opportunity, but he did not.

Second, plaintiff was represented by counsel and as the extensive record and state court filings show, he had ample opportunity to pursue the claims surrounding his revocation and subsequent termination, including his First Amendment claim. Third, as in *Crosland* "plaintiff neither claims that he was barred from presenting evidence in support of his First Amendment claim nor asserts that he has new evidence that was unavailable to him at the time of the Article 78 proceeding." 140 F.Supp.2d at 311. Consequently, because the State has shown that the retaliation issue was properly raised by the pleadings or otherwise placed in issue, and actually determined in the Article 78 proceeding, and because plaintiff has not shown that he was deprived of a full and fair opportunity to litigate that claim during the Article 78 proceeding, the *Rooker–Feldman* doctrine mandates the conclusion that this court lacks subject matter jurisdiction to consider plaintiff's retaliation claim. Accordingly, the court hereby grants the State's motion to dismiss same pursuant to Fed.R.Civ.P. 12(b)(1).

### ii. Equal Protection

 Having disposed of plaintiff's First Amendment claim, there is only one claim remaining—Equal Protection. The core of plaintiff's equal protection violation in this action is as follows:

> The plaintiff was singled out by the [State]...and punished differently than similarly situated co-workers, based in substantial part upon...[the State's] *irrational animus against plaintiff and retaliatory motivation* against plaintiff based on [his] well known position as an active member of the Democratic Party in Columbia County and in New York State.

Co. at 55, ¶ 133 (emphasis added). As part of this claim, plaintiff further alleges that the State's "determinations and discrimi-

natory treatment alleged [t]herein were without a rational basis." *Id.* at 55, ¶ 133. The Third Department explicitly found to the contrary, however. It plainly held that "petitioner's failure to mention his probation violation in the application supplement provides a rational basis for the conclusion that such omission was deceptive and intentional, thereby justifying revocation of petitioner's appointment." *Dolan,* 304 A.D.2d at 1039, 759 N.Y.S.2d 221.

For the same reasons which this holding "subsumed" plaintiff's retaliation claim, it also "subsumes" his Equal Protection claim. Plaintiff Dolan cannot avoid the collateral estoppel implications of the Third Department's holding simply by relying upon a new legal theory—Equal Protection. The court agrees with the State that when the Supreme court "reject[ed] [plaintiff's] bad faith termination claim and held that the decision to terminate his employment was rational and fully in accordance with law[,]" plaintiff's "equal protection claim was necessarily decided adverse to plaintiff in his previous state proceedings." St. Memo. at 16 (citation omitted).

Plaintiff counters that his equal protection claim was not actually and necessarily decided in the Article 78 proceeding because that claim raises "distinct" issues from those which were litigated and decided in state court. *See* Pl. Memo. at 9. Plaintiff explains that even if, as the state court found, the State had a rational basis under section 50(4) for terminating him, that does not exclude the possibility that his termination was constitutionally impermissible. This conclusion, however, flies in the face of the case law discussed in the preceding section. As mentioned earlier, State Supreme Court expressly found that "Civil...Service's decision to revoke petitioner's appointment, therefore, was fully in accordance with law." R. at 8. In a similar vein, the Appellate Division found that because there was a rational basis for

plaintiff's termination, Civil Service's decision was not arbitrary and capricious. *Dolan,* 304 A.D.2d at 1039, 759 N.Y.S.2d 221. In accordance with the case law discussed above, these findings would preclude a subsequent contrary finding by this court, *i.e.* that plaintiff's Equal Protection rights were violated. Thus, for all of these reasons, the court finds that plaintiff's equal protection claim was actually decided for collateral estoppel purposes.

Plaintiff asserts that he did not have a full and fair opportunity to litigate his equal protection claim in state court because he was denied discovery there. This argument lacks merit. As the Second Circuit recognized in *Moccio,* "the general inability to obtain in the Article 78 proceeding all the discovery [plaintiff] might be entitled to in federal court" does not "diminish the full and fair opportunity [plaintiff] had to litigate these issues in the Article 78 proceeding." *Moccio,* 95 F.3d at 202; *see also Vega v. University of New York Bd. of Trustees,* 67 F.Supp.2d 324, 336 (S.D.N.Y.1999) (citation omitted) (because "[t]he lack of discovery does not, in an of itself, prevent a finding of collateral estoppel[,]" court rejected plaintiff's argument that he was denied a full and fair opportunity to litigate a claim because he was not allowed discovery).

To conclude, the court hereby GRANTS the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). This holding renders moot defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. The court also DENIES plaintiff's cross-motion for discovery pursuant to Fed.R.Civ.P. 56(f).

IT IS SO ORDERED.